PECHMAN LAW GROUP PLLC
Louis Pechman, Esq.
Gianfranco J. Cuadra, Esq.
488 Madison Avenue, 11th Floor
New York, New York 10022
Tel.:  (212) 583-9500
pechman@pechmanlaw.com
cuadra@pechmanlaw.com

CORDELLO LAW PLLC
Justin Cordello, Esq.
693 East Avenue, Suite 220
Rochester, NY 14607
Tel.:  (585) 857-9684
justin@cordellolaw.com

*Attorneys for Plaintiffs, the Rule 23
Class, and the FLSA Collective*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X

| | |
|---|---|
| KATHLEEN DOWD and NICOLE SILVAROLI, on behalf of themselves and all others similarly situated, :<br><br>Plaintiffs, :<br><br>-against- :<br><br>6675 TRANSIT RD LLC d/b/a RUSSELL'S STEAKS, CHOPS & MORE, MARK JERGE, ROBERT BINGEL, and RUSSELL SALVATORE, :<br><br>Defendants. : | **16 Civ. 1006**<br><br>**COMPLAINT**<br><br>**COLLECTIVE AND CLASS ACTION** |

-------------------------------------------------------------------- X

Plaintiffs Kathleen Dowd and Nicole Silvaroli ("plaintiffs"), on behalf of

themselves and all others similarly situated, by their attorneys Pechman Law Group

PLLC and Cordello Law PLLC, complaining of defendants 6675 Transit RD LLC d/b/a

Russell's Steaks, Chops & More ("Russell's"), Russell Salvatore, Robert Bingel, and

Mark Jerge (collectively, "defendants"), allege:

**NATURE OF THE ACTION**

1.      Throughout most of plaintiffs' employment as servers at Russell's, defendants required servers and other waitstaff members to share portions of their tips with a manager.

2.      During the same period, defendants required plaintiffs and other waitstaff employees to purchase, and pay for the laundering of, their uniforms.

3.      Defendants did not inform plaintiffs of defendants' intention to take a tip credit against their wages.

4.      Despite the foregoing, throughout plaintiffs' employment at Russell's, defendants paid plaintiffs and other waitstaff employees at the reduced minimum hourly wage rate for tipped employees.

5.      Defendants unlawfully fired plaintiff Kathleen Dowd because she complained to defendants about their unlawful employment practices.

6.      Plaintiffs bring this action to recover unpaid minimum wages, misappropriated gratuities, liquidated damages, statutory damages, pre- and post-judgment interest, retaliation damages, and attorneys' fees and costs pursuant to Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and section 190 *et seq.* of the New York Labor Law ("NYLL") on behalf of themselves and all waitstaff employees that worked at Russell's in the six years preceding the filing of this Complaint.

**JURISDICTION**

7.      This Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331 and 1337, and has supplemental jurisdiction over plaintiffs' claims under the NYLL pursuant to 28 U.S.C. § 1367.

## VENUE

8.      Venue is proper in the Western District of New York pursuant to 28 U.S.C.

§ 1391.  All facts alleged in this Complaint occurred at 6675 Transit RD LLC d/b/a

Russell's Steaks, Chops & More, located in the Western District of New York.

## THE PARTIES

**Plaintiffs**

9.      Kathleen Dowd resides in Williamsville, New York.

10.     Defendants employed Dowd as a server from approximately 2009 through

August 2016.

11.     Nicole Silvaroli resides in Amherst, New York.

12.     Defendants employed Silvaroli as a server from approximately 2009

through July 2016.

13.     Throughout their employment, Dowd and Silvaroli were engaged in the

production or in the handling or selling of, or otherwise working on, goods or materials

that have been moved in or produced for commerce.

14.     Throughout their employment, Dowd and Silvaroli were covered, non-

exempt employees within the meaning of the FLSA and NYLL.

**Defendant 6675 Transit RD**

15.     Defendant 6675 Transit RD is a New York corporation that owns,

operates, and does business as Russell's Steaks, Chops & More, a steakhouse located at

6675 Transit Road, Williamsville, NY 14221.

16.     Since its opening in 2008, critics have described Russell's as a high-end

and prestigious steakhouse.  For example, in 2016, Russell's was voted a "top 100

Steakhouse in America" by OpenTable.

17.     Russell's has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

18.     Russell's had an annual gross volume of sales in excess of $500,000 in 2015.

19.     Russell's had an annual gross volume of sales in excess of $500,000 in 2014.

20.     Russell's had an annual gross volume of sales in excess of $500,000 in 2013.

21.     Russell's is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

22.     6675 Transit RD is listed on plaintiffs' paystubs as their employer.

**Defendant Russell Salvatore**

23.     Defendant Russell Salvatore owns and is actively operating Russell's.

24.     Throughout plaintiffs' employment, Salvatore regularly exercised his authority to hire and fire employees.

25.     Throughout plaintiffs' employment, Salvatore personally directed the manner in which employees performed their daily duties and assignments.

26.     Throughout plaintiffs' employment, Salvatore established and implemented the pay practices at Russell's, including those alleged in this Complaint.

27.     Throughout plaintiffs' employment, Salvatore had the power to, and did, establish the pay rates of employees at Russell's, including those of the plaintiffs.

28.     Throughout plaintiffs' employment, Salvatore established and implemented employee scheduling policies at Russell's.

29.     Throughout plaintiffs' employment, Salvatore has had power over payroll decisions at Russell's, including the power to retain time and/or wage records.

30.     For example, Salvatore's signature is on all of plaintiffs' paychecks.

31.     For example, Salvatore was regularly present at Russell's greeting customers and actively managing restaurant operations.

32.     For example, Salvatore personally directed the work duties of waitstaff members, including those of Dowd and Silvaroli.

33.     For example, Salvatore was involved in deciding whether to terminate waitstaff members who worked with Dowd and Silvaroli.

34.     Upon information and belief, Salvatore was involved in the decision to terminate Dowd.

35.     Salvatore has had a mausoleum built at Russell's for his remains to be kept.

36.     Salvatore is listed as a principal with the New York State Liquor Authority for the Russell's liquor license.

37.     Russell Salvatore exercises sufficient control over the operations at Russell's to be considered plaintiffs' employer under the FLSA and NYLL.

**Defendant Robert Bingel**

38.     Defendant Robert Bingel is a manager, agent, or operator of Russell's.

39.     Throughout plaintiffs' employment, Bingel hired and fired employees.

40.     Throughout plaintiffs' employment, Bingel directed the manner in which employees performed their daily duties and assignments.

41.     Throughout plaintiffs' employment, Bingel established and implemented the pay practices at Russell's.

5

42.     Throughout plaintiffs' employment, Bingel has had power over payroll decisions at Russell's, including the power to retain time and/or wage records.

43.     Throughout plaintiffs' employment, Bingel established and implemented scheduling policies at Russell's.

44.     For example, Bingel created plaintiff Silvaroli's work schedules.

45.     Bingel created and set the work schedules of other waitstaff at Russell's.

46.     For example, Bingel interviewed plaintiff Dowd.

47.     Bingel was involved in the decision to hire Dowd.

48.     Bingel was involved in the decision to fire Dowd.

49.     Bingel exercises sufficient control over the operations at Russell's to be considered plaintiffs' employer under the FLSA and NYLL.

**Defendant Mark Jerge**

50.     Defendant Mark Jerge is General Manager at Russell's.

51.     Throughout plaintiffs' employment, Jerge hired and fired employees.

52.     Throughout plaintiffs' employment, Jerge directed the manner in which employees performed their daily duties and assignments.

53.     Throughout plaintiffs' employment, Jerge established and implemented the pay practices at Russell's.

54.     Throughout plaintiffs' employment, Jerge has had power over payroll decisions at Russell's, including the power to retain time and/or wage records.

55.     Throughout plaintiffs' employment, Jerge established and implemented scheduling policies at Russell's.

56.     For example, Jerge fired plaintiff Dowd.

57.     For example, Jerge made the decision to fire plaintiff Silvaroli.

6

58.     Jerge is listed as a principal in with the New York State Liquor Authority for the Russell's liquor license.

59.     Jerge exercises sufficient control over the operations at Russell's to be considered plaintiffs' employer under the FLSA and NYLL.

### CLASS ACTION ALLEGATIONS

60.     Plaintiffs bring the claims in this Complaint arising out of the NYLL under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class consisting of all persons who have worked as waiters, busboys, bartenders, and runners for defendants at Russell's (the "waitstaff") for the past six years (the "Rule 23 Class")

61.     The waitstaff in the Rule 23 Class are so numerous that joinder of all members is impracticable.

62.     Upon information and belief, the size of the Rule 23 Class is at least fifty people, although the precise number of such employees is unknown.  Facts supporting the calculation of that number are presently within the sole control of defendants.

63.     Common questions of law and fact exist as to the Rule 23 Class that predominate over questions affecting them individually including, *inter alia*, the following:

   a.  Whether defendants violated NYLL Article 6, § 190, *et seq.*, and Article 19, § 650, *et seq.*, and the supporting New York State Department of Labor regulations, 12 N.Y.C.R.R. Parts 137 and 146, as alleged herein;

   b.  Whether defendants failed to pay the Rule 23 Class the minimum wage for all hours worked;

   c.  Whether defendants required the Rule 23 Class to pay for customer mistakes and walkouts;

   d.  Whether defendants required the Rule 23 Class to pay for the cost of purchasing and laundering their Russell's uniforms without reimbursement;

7

e.   Whether defendants redistributed portions of the tips earned by its the Rule 23 Class to a manager who was not entitled to receive tips under the FLSA and the NYLL;

f.   Whether defendants failed to keep accurate records of hours worked by employees as required by the NYLL;

g.   Whether defendants failed to provide the Rule 23 Class members at the time of hiring or whenever there was a change in their rates of pay with a notice stating, *inter alia*, their rates of pay and the basis thereof, whether paid by the hour or otherwise, and allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances, in violation of NYLL § 195(1);

h.   Whether defendants failed to provide accurate wage statements at the end of every pay period to all Rule 23 Class members, in violation of NYLL § 195(3); and

i.   The nature and the extent of class-wide injury and the measure of damages for those injuries.

64.   Plaintiffs' claims are typical of the claims of the Rule 23 Class they seek to represent.

65.   Plaintiffs and the members of the Rule 23 Class work or have worked for defendants as waitstaff within the six years prior to the filing of this action.

66.   Plaintiffs and the members of the Rule 23 Class enjoy the same statutory rights under the NYLL to be paid at the correct minimum wage rates, and to keep the gratuities they earn.

67.   Plaintiffs and the members of the Rule 23 Class have sustained similar types of damages as a result of defendants' failure to comply with the NYLL.

68.   Plaintiffs and the Rule 23 Class have all been injured in that they have been under-compensated due to defendants' common policies, practices, and patterns of conduct.

69.   Plaintiffs will fairly and adequately represent and protect the interests of the members of the Rule 23 Class.

70.     Plaintiffs have retained counsel competent and experienced in wage and hour litigation and class action litigation.

71.     There is no conflict between the plaintiffs and the Rule 23 Class members.

72.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation.

73.      The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of defendants' common policies, practices, and procedures.

74.     Although the relative damages suffered by the individual class members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.

75.     Individual plaintiffs lack the financial resources necessary to conduct a thorough examination of defendants' compensation practices and to prosecute vigorously a lawsuit against defendants to recover such damages.

76.     In addition, class action litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about defendants' practices.

77.     This action is properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

**COLLECTIVE ACTION ALLEGATIONS**

78.     The claims in this Complaint arising out of the FLSA are brought by plaintiffs on behalf of themselves and similarly situated persons who are current and former waitstaff of defendants since the date three years prior to the filing of this action who elect to opt-in to this action (the "FLSA Collective").

9

79.     The FLSA Collective consist of over fifty waitstaff who have been victims of defendants' common policy and practices that have violated their rights under the FLSA by, *inter alia*, willfully denying them minimum wages and unlawfully misappropriating portions of the waitstaff's tips.

80.     The FLSA Collective consist of persons who, during their employment with defendants, worked as servers, bussers, runners, and bartenders and fell into the category of non-exempt, non-managerial tipped employees who customarily and regularly earned more than $30 per month in tips.

81.     As part of their regular business practices, defendants have intentionally, willfully, and repeatedly harmed waitstaff by engaging in a pattern, practice, and/or policy of violating the FLSA and NYLL.  This policy and pattern or practice includes, *inter alia,* the following:

>    a.   failing to keep accurate records of hours worked by the FLSA Collective as required by the FLSA and the NYLL;
>
>    b.   failing to notify the FLSA Collective that defendants were taking a "tip credit" against their wages;
>
>    c.   failing to pay the FLSA Collective minimum wages for all hours worked;
>
>    d.   depriving the FLSA Collective of portions of their tips earned;
>
>    e.   requiring the FLSA Collective to pay for customer walkouts and/or other mistakes; and
>
>    f.   requiring the FLSA Collective to pay for their uniform vests without providing reimbursement of costs for their purchase or laundering.

82.     Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees their compensation.

83.     Defendants' unlawful conduct has been intentional, willful, and in bad faith and has caused significant monetary damage to the FLSA Collective.

10

84.     The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit.

85.     Those similarly situated employees are known to Russell's and are readily identifiable and locatable through the records of Russell's.

86.     Those similarly situated employees should be notified of and allowed to opt into this action, pursuant to 29 U.S.C. § 216(b).

## FACTUAL ALLEGATIONS

**Defendants' Failure to Pay Waitstaff the Full Minimum Wage Rate**

87.     Throughout plaintiffs' employment, defendants paid the waitstaff at the reduced tipped employee minimum hourly wage rate.

88.     Defendants did not provide waitstaff with written or oral notices stating defendants' intention to take a "tip credit" against plaintiffs' wages.

89.     The waitstaff's weekly wage statements did not reflect the amounts that defendants purportedly claimed to take as a tip credit against their wages.

90.     For example, for the workweek of January 4 to 10, 2016, plaintiff Dowd worked 28.82 hours and was paid at the reduced hourly minimum wage rate of $7.50.

91.     For that workweek, defendants did not pay Dowd at the full hourly minimum wage rate of $9.00.

92.     Dowd's paystub for that workweek, as well as her paystubs from every workweek throughout her employment, do not reflect the amounts that defendants claim to have taken as a tip credit against her wages.

93.     For example, for the workweek of September 14 to 20, 2015, plaintiff Silvaroli worked 26.08 hours and was paid at the reduced hourly minimum wage rate of $5.00.

11

94.     For that workweek, defendants did not pay Silvaroli at the full hourly minimum wage rate of $8.75.

95.     Silvaroli's paystub for that workweek, as well as her paystubs from every workweek throughout her employment, do not reflect the amounts that defendants claim to have taken as a tip credit against her wages.

**Defendants' Unlawful Misappropriation of Waitstaff Tips**

96.     Throughout a significant portion of plaintiffs' employment, defendants employed, and continue to employ, a dining room manager named Santino.

97.     Throughout Santino's employment at Russell's, each waitstaff member, including plaintiffs, was required to give $3.00 per night of his or her tips to Santino.

98.     Until approximately January 2016, Santino was paid on a salary basis.

99.     Defendants stopped paying Santino on a salary basis only after plaintiff Dowd complained about, *inter alia*, having to give $3.00 of her tips to Santino.

100.     Santino had *de minimis* interaction with customers at Russell's.

101.     Santino directed the duties of all waitstaff, including plaintiffs, on a day-to-day basis at Russell's.

102.     Santino had the key to Russell's.

103.     Santino disciplined waitstaff by, for example, sending them home for the day.

104.     Santino determined the daily working stations of each waitstaff member.

**Defendants Unlawfully Required Waitstaff to Pay for Mistakes and Uniforms**

105.     Defendants also required waitstaff to pay $14.00 per uniform vest, which bears the restaurant's logo on the left breast.

106.    Defendants did not reimburse plaintiffs or the waitstaff for the cost of purchasing the vests.

107.    Defendants did not reimburse plaintiffs or the waitstaff for the cost of laundering the vests.

108.    For example, plaintiff Dowd spent approximately $125.00 per year to purchase and launder Russell's vests.

109.    Defendants required the waitstaff to pay for order mistakes.

110.    Defendants required the waitstaff to pay for customer walkouts.

111.    For example, in or about January 2016, Russell's accepted promotional certificates, which customers used to pay for meals at the restaurant.

112.    During that period, approximately six waitstaff members, including Dowd, paid $25.00 each to cover customers' meal costs when customers used invalid promotional certificates that were inadvertently accepted at Russell's.

**Defendants' Retaliation Against Dowd**

113.    In or about January 2016, Dowd complained to Bingel and Jerge about having to share portions of her tips with Santino, a salaried manager.

114.    During this period, Dowd complained about having to pay for order mistakes at Russell's.

115.    During this period, Dowd also complained about Russell's decision to stop all healthcare coverage for the waitstaff.

116.    In or about August 2016, Bingel and Jerge confronted Dowd about a customer from July 2016 whose credit card strip was unreadable.

117.    In July 2016, Dowd had manually authorized the use of the customer's credit card on the point of sale system at Russell's.

13

118.   Dowd had manually authorized other customers' credit cards on several occasions throughout the course of her employment at Russell's without issue.

119.   Although the point of sale system at Russell's accepted the customer's credit card and printed out a receipt, which the customer signed in July 2016, Russell's did not receive payment for the customer's meal.

120.   In August 2016, defendants insisted that Dowd return her gratuity to the restaurant and pay for the customer's meal costs, totaling approximately $90.00.

121.   In good faith, Dowd agreed to return her gratuity, but refused to pay Russell's for the customer's bill.

122.   Dowd told Jerge and Bingel that requiring her to pay for Russell's food costs was a violation of the NYLL and FLSA.

123.   In response, on August 18, 2016, Jerge removed Dowd from the Russell's schedule and had other waitstaff cover her shifts.

124.   Defendants did not schedule Dowd for any future shifts at Russell's.

125.   By e-mail dated August 21, 2016, Jerge informed Dowd that her employment at Russell's was terminated.

**FIRST CLAIM**
**(Fair Labor Standards Act – Unpaid Minimum Wage)**

126.   Plaintiffs and the FLSA Collective repeat and reallege all forgoing paragraphs as if set forth herein.

127.   Defendants are employers within the meaning of 29 U.S.C. § 201, *et seq.*

128.   Defendants were required to pay plaintiffs and the FLSA Collective the applicable minimum wage rate for each hour that they worked.

129.   Defendants failed to pay plaintiffs and the FLSA Collective the minimum wages to which they were entitled under the FLSA.

14

130.     Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of plaintiffs and the FLSA Collective.

131.     As a result of defendants' willful violations of the FLSA, plaintiffs and the FLSA Collective have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs of this action, and other compensation pursuant to 29 U.S.C. § 216(b).

**SECOND CLAIM**
**(New York Labor Law – Unpaid Minimum Wage)**

132.     Plaintiffs and the Rule 23 Class repeat and reallege all forgoing paragraphs as if set forth herein.

133.     Defendants are employers within the meaning of the NYLL §§ 190 *et seq.*, 651(5), and 652, and supporting New York State Department of Labor ("NYDOL") Regulations.

134.     Defendants failed to pay plaintiffs and the Rule 23 Class the minimum wages to which they were entitled under the NYLL.

135.     Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay plaintiffs and the Rule 23 Class minimum hourly wages.

136.     As a result of defendants' willful violations of the NYLL, plaintiffs and the Rule 23 Class have suffered damages by being denied minimum wages in accordance with the NYLL in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs of this action.

## THIRD CLAIM
### (New York Labor Law – Illegal Deductions)

137.    Plaintiffs and the Rule 23 Class repeat and reallege all forgoing paragraphs as if set forth herein.

138.    NYLL § 193(1) prohibits employers from making any deductions from an employee's wages, whether directly or by separate transaction, except for those permitted by law.

139.    NYLL § 196-d prohibits any employer or his agents, such as a manager, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity of any charge purported to be a gratuity for an employee.

140.    Defendants' policy allowed a manager to skim portions of gratuities belonging to plaintiffs and the Rule 23 Class.

141.    Defendants have been agents or officers of a corporation within the meaning of NYLL, Article 6, § 196-d and the supporting NYDOL regulations.

142.    By defendants' knowing or intentional demand for, acceptance, and/or retention of gratuities paid by customers for plaintiffs and the Rule 23 Class, defendants have willfully violated NYLL, Article 6, § 196-d and its supporting NYDOL Regulations.

143.    Defendants also required plaintiffs and the Rule 23 Class to pay for the costs of purchasing and laundering their uniforms without reimbursement.

144.    As a result of defendants' willful violations of the NYLL, plaintiffs and the Rule 23 Class are entitled to recover from defendants their unpaid wages, liquidated damages, reasonable attorneys' fees and costs of this action, and pre- and post-judgment interest.

**FOURTH CLAIM**
**(FLSA – Retaliation)**

145.    Plaintiff Dowd repeats and realleges all forgoing paragraphs as if set forth herein.

146.    The FLSA, 29 U.S.C. § 215(a), prohibits "any person" from discharging or "in any other manner" discriminating against "any employee because such employee has filed any complaint . . . under or related to this Act."

147.    Dowd is an "employee" within the meaning of the section 215 of the FLSA.

148.    Defendants are "any person" within the meaning of the section 215.

149.    Defendants discharged and discriminated against Dowd's employment in retaliation for engaging in protected activity, such as opposing and complaining in good faith about defendants' illegal pay and employment practices.

150.    Defendants' FLSA violations have caused and proximately caused Dowd to suffer damages.

151.    Dowd is entitled to recover from defendants, individually and/or jointly all available damages, including her lost wages, maximum liquidated damages, punitive damages, and attorneys' fees and costs of the action pursuant to section 215 of the FLSA.

**FIFTH CLAIM**
**(NYLL – Retaliation)**

152.    Plaintiff Dowd repeats and realleges all forgoing paragraphs as if set forth herein.

153.    NYLL § 215(1)(a) prohibits an employer from discharging, penalizing or "in any other manner" retaliating against an employee "because such employee has

made a complaint to his or her employer . . . that the employer has violated any provision of this chapter."

154.    Dowd is an "employee" within the meaning of NYLL § 215 and applicable regulations.

155.    Defendants are "employers" and "agents" within the meaning of the NYLL §§ 2, 215, and 651 and applicable regulations.

156.    A notice of this action/claim was provided to the New York State Attorney General pursuant to the NYLL § 215 at or prior to the filing of this action.

157.    Defendants discharged, penalized, or otherwise retaliated against Dowd's employment in violation of the NYLL § 215 for engaging in protected activity, such as opposing and complaining in good faith about defendants' illegal pay practices.

158.    Defendants' NYLL violations have caused and proximately caused Dowd to suffer damages.

159.    Dowd is entitled to recover from defendants, individually and/or jointly all available damages, including her lost wages, maximum liquidated damages, other damages, and attorneys' fees and costs of the action pursuant to NYLL § 215.

**SIXTH CLAIM**
**(New York Labor Law – Wage Theft Prevention Act, Failure to Provide Notices)**

160.    Plaintiffs and the Rule 23 Class repeat and reallege all forgoing paragraphs as if set forth herein.

161.    The NYLL and Wage Theft Prevention Act ("WTPA"), as well as the NYDOL's interpretative regulations, such as but not limited to 12 N.Y.C.R.R. Part 146, require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

18

162.     From its enactment on April 9, 2011, through 2014, the Wage Theft Prevention Act also required employers to provide an annual written notice of wages to be distributed on or before February 1 of each year of employment.

163.     In violation of NYLL § 191, defendants failed to furnish plaintiffs and the Rule 23 Class at the time of hiring, whenever there was a change to rates of pay, and on or before February 1 of each year of employment through 2014, wage notices containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law; in violation of the NYLL § 195(1).

164.     Due to defendants' violation of NYLL § 195(1), plaintiffs and the Rule 23 Class are entitled to recover from defendants liquidated damages of $50 per workday that the violation occurred, up to a maximum of $5,000, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-b).

### SEVENTH CLAIM
### (NYLL Wage Theft Prevention Act – Failure to Provide Wage Statements)

165.     Plaintiffs and the Rule 23 Class repeat and reallege all foregoing paragraphs as if set forth herein.

166.     The NYLL and WTPA require employers to provide employees with an accurate wage statement each time they are paid.

167.     Throughout plaintiffs' and the Rule 23 Class's employment with defendants, defendants paid plaintiffs and the Rule 23 Class without providing a wage statement at the end of every pay period accurately listing, *inter alia*:  the overtime rate or rates of pay; the number of regular and overtime hours worked per pay period; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; or net wages.

168.     Defendants failed to furnish plaintiffs and the Rule 23 Class with each payment of wages an accurate statement listing:  the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; or net wages, in violation of the NYLL § 195(3).

169.     Due to defendants' violation of NYLL § 195(3), plaintiffs and the Rule 23 Class are entitled to recover from defendants liquidated damages of $250 per workday that the violation occurred, up to a maximum of $5,000, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-d).

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs, the Rule 23 Class, and the FLSA Collective respectfully request that this Court enter a judgment:

a.     certifying the case as a collective action for the violations of the FLSA alleged in the Complaint for the employees described herein and designating plaintiffs' attorneys as counsel for the FLSA Collective;

b.       designating the named plaintiffs as the representatives of the FLSA Collective;

c.       certifying the case as a class action pursuant to the NYLL and Rule 23 of the Federal Rules of Civil Procedure as it pertains to all NYLL claims set forth in the Complaint for the class of employees described herein, certifying plaintiffs as class representatives, and designating plaintiffs' attorneys as Class counsel;

d.       authorizing the issuance of notice at the earliest possible time to all waitstaff who were employed by defendants during the three years immediately preceding the filing of this action.  This notice should inform them that this action has been filed, describe the nature of the action, and explain their right to opt into this lawsuit;

e.       declaring that defendants have violated the minimum wage provisions of the FLSA and the NYLL;

f.       declaring that defendants unlawfully retained portions of the waitstaff's gratuities, in violation of the NYLL;

g.       declaring that defendants unlawfully deducted sums from plaintiffs', the Rule 23 Class's, and the FLSA Collective's wages by separate transaction by requiring them to pay for uniform purchase and laundering costs;

h.       declaring that defendants unlawfully deducted sums from the wages and tips of plaintiffs, the Rule 23 Class, and the FLSA Collective by requiring them to pay for customer walkouts and mistakes;

i.       declaring that defendants violated the notice and record keeping provisions of the NYLL and WTPA;

21

j.      declaring that defendants' violations of the FLSA and NYLL were willful;

k.      declaring that defendants unlawfully retaliated against plaintiff Dowd;

l.      enjoining future violations of the FLSA and NYLL by defendants;

m.     awarding plaintiffs, the FLSA Collective, and the Rule 23 Class damages for unpaid minimum wages;

n.      disgorging and ordering that defendants remit back the amount of the tips misappropriated from plaintiffs, the Rule 23 Class, and the FLSA Collective;

o.      awarding plaintiff Dowd compensatory and punitive damages for unlawful retaliation;

p.      awarding plaintiffs and the FLSA Collective liquidated damages in an amount equal to the total amount of the wages found to be due pursuant to the FLSA and the NYLL;

q.      awarding plaintiffs, the FLSA Collective, and the Rule 23 Class statutory damages as a result of defendants' failure to furnish wage statements pursuant to the NYLL;

r.      awarding plaintiffs, the FLSA Collective, and the Rule 23 Class statutory damages as a result of defendants' failure to furnish annual notices pursuant to the NYLL;

s.      awarding plaintiffs, the Rule 23 Class, and the FLSA Collective pre- and post-judgment interest under the NYLL;

t.      awarding plaintiffs, the Rule 23 Class, and the FLSA Collective reasonable attorneys' fees and costs pursuant to the FLSA and the NYLL; and

      u.    awarding such other and further relief as the Court deems just and proper.

Dated: New York, New York
      December 16, 2016

                    PECHMAN LAW GROUP PLLC

                    By: _____
                      Louis Pechman, Esq.
                      Gianfranco J. Cuadra, Esq.
                      488 Madison Avenue, 11th Floor
                      New York, New York 10022
                      Tel.: (212) 583-9500
                      pechman@pechmanlaw.com
                      cuadra@pechmanlaw.com

                    CORDELLO LAW PLLC

                  By: _____
                      Justin Cordello, Esq.
                      693 East Avenue, Suite 220
                      Rochester, NY 14607
                      Tel.: (585) 857-9684
                      justin@cordellolaw.com

                    *Attorneys for Plaintiffs, the Rule 23 Class,*
                    *and the FLSA Collective*