UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KATHLEEN DOWD AND NICOLE SILVAROLI,

                       Plaintiffs,

                v.

6675 TRANSIT RD LLC, et al.

                     Defendants.

Civil Action No.
1:16-cv-01006-LJV

---

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION AND IN SUPPORT OF DEFENDANTS'
CROSS-MOTION TO STRIKE PLAINTIFFS' REMAINING CLASS CLAIMS**

BOND, SCHOENECK & KING, PLLC

Sharon M. Porcellio, Esq.
Michael E. Hickey, Esq.
Riane F. Lafferty, Esq.
Avant Building – Suite 900
200 Delaware Avenue
Buffalo, New York 14202-2107
Telephone:  (716) 416-7000
Fax:  (716) 416-7001

*Attorneys for Defendants*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................................ III

PRELIMINARY STATEMENT ........................................................................................ 1

PROCEDURAL HISTORY .............................................................................................. 2

STATEMENT OF RELEVANT FACTS ........................................................................... 5

ARGUMENT ................................................................................................................... 8

I.  THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL
    JURISDICTION OVER PLAINTIFFS' STATE LAW CLASS CLAIMS ............ 8

II. THE COURT SHOULD DENY PLAINTIFFS' MOTION BECAUSE
    THEY HAVE NOT MET THE REQUIREMENTS FOR RULE 23
    CLASS CERTIFICATION ...................................................................................... 11

    A.  Standard for Certifying a Class under Fed. R. Civ. P. 23 ....................... 122

    B.  Plaintiffs Cannot Satisfy the Rule 23 Requirements for
        Class Certification ....................................................................................... 12

        1.  The Named Plaintiffs Are Inadequate Class Representatives
            Because They Admittedly Suffered No Injury as a Result
            of the Alleged Notice and Paystub Violations ............................ 133

            a)  The Named Plaintiffs Suffered No Injury
                Resulting From Defendants' Alleged Failure
                to Provide Written Tip Credit Notice ................................ 15

            b)  The Named Plaintiffs Suffered No Injury as a
                Result of the Alleged Paystub Violation ........................... 17

        2.  Plaintiffs' Notice and Paystub Claims Are Neither Typical
            Nor Common of the Putative Class and Individual Issues
            Predominate ................................................................................. 19

III. PLAINTIFFS' MOTION FOR CLASS CERTIFICATION IS
     UNTIMELY AND POTENTIALLY OVERBROAD ........................................... 23

IV.  PLAINTIFFS' PROPOSED NOTICE IS PREMATURE .................................... 24

V.      PLAINTIFFS' POST-DISCOVERY REQUEST TO COMPEL
         PRODUCTION OF CLASS-WIDE INFORMATION
         MUST BE DENIED ............................................................................................24

VI.     THE COURT SHOULD STRIKE ANY REMAINING CLASS CLAIMS
         FROM THE COMPLAINT AS THEY HAVE BEEN ABANDONED ...............25

CONCLUSION.............................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

**Page**

**Cases**

*Blum v. Yaretsky,*
457 U.S. 991, 999 (1982) .......................................................................... 14

*Carnegie-Mellon Univ. v. Cohill,*
484 U.S. 343, 350 (1988) ............................................................................ 9

*Carvente-Avila v. Chaya Mushkah Rest.,*
2016 U.S. Dist. LEXIS 75396 (S.D.N.Y. Mar. 1, 2016) ......................... 17

*Cent. States Se. and Sw. Areas Health & Welfare Fund v. Merck-Medco*
*Managed Care, LLC,* 504 F.3d 229, 241 (2d Cir. 2007) .................... 14, 15

*Comcast Corp. v. Behrend,*
569 U.S. 27, 27 (2013) .............................................................................. 12

*DeAsencio v. Tyson Foods, Inc.,*
342 F.3d 301, 309 (3d Cir. 2003) ............................................................. 11

*Denney v. Deutsche Bank AG,*
443 F.3d 253, 264 (2d Cir. 2006) ............................................................. 15

*Franco v. Jubilee First Ave. Corp.,*
2016 U.S. Dist. LEXIS 114191, *39-41 (S.D.N.Y. Aug. 25, 2016) ........ 17

*Gen. Tel. Co. of the Sw. v. Falcon,*
457 U.S. 147, 157 (1982) .......................................................................... 19

*Gregory v. Stewart's Shops Corp.,*
2016 U.S. Dist. LEXIS 89576, at *97 (N.D.N.Y. July 8, 2016) .............. 22

*Hicks v. T.L. Cannon Mgmt. Corp.,*
13-cv-06455-EAW-MWP, Dkt. #321 (W.D.N.Y. Mar. 12, 2018) ........... 21

*In re Initial Pub. Offerings Sec. Litig. v. Merrill Lynch & Co.,*
471 F.3d 24, 41 (2d Cir. 2006) ................................................................. 12

*In re Literary Works In Elec. Databases Copyright Litig. V. Thomson Corp.,*
654 F.3d 242, 249 (2d Cir. 2011) ............................................................. 13

*Javier H. v. Garcia-Botello,*
2011 U.S. Dist. LEXIS 104039, *20 (W.D.N.Y. Sept. 11, 2011) .............. 15, 17, 19

*Lewis Tree Serv. v. Lucent Techs., Inc.,*
211 F.R.D. 228, 231 (S.D.N.Y. 2002) ...................................................... 12

*Lewis v. Casey,*
518 U.S. 343, 357 (1996) .......................................................................... 14

*Lujan v. Defs. of Wildlife,*
504 U.S. 555, 560-61 (1992) .............................................................. 13, 14

*Myers v. Hertz Corp.*,
  624 F.3d 537, 547 (2d Cir. 2010) ................................................................................ 20, 22

*Nat'l Fuel Gas Distrib. Corp. v. New York State Energy Research & Dev. Auth.*,
  265 F. Supp. 3d 286, 299 (W.D.N.Y. 2017) ...................................................................... 9

*Raines v. Byrd*,
  521 U.S 811, 820, n.3 (1997) ........................................................................................... 13

*Ravenell v. Avis Budget Care Rental, LLC*,
  2010 U.S. Dist. LEXIS 72563, at *16 (E.D.N.Y. July 19, 2010) ..................................... 24

*Robinson v. Metro-N. Commuter R.R. Co.*,
  267 F.3d 147, 155 (2d Cir. 2001) .................................................................................... 19

*Rocco v. Nam Tai Elecs., Inc.*,
  245 F.R.D. 131, 135-36 (S.D.N.Y. 2007) ........................................................................ 19

*Ruggles v. Wellpoint, Inc.*,
  272 F.R.D. 320, 333 (N.D.N.Y. 2011) ............................................................................ 13

*Salim Shahriar v. Smith & Wollensky Rest. Group, Inc.*,
  659 F.3d 234, 244, 248 (2d. Cir. 2011) .......................................................................... 10

*Sanchez v. Turner*,
  2002 U.S. Dist. LEXIS 10911, *10-11 (S.D.N.Y. June 19, 2002),
  *aff'd, Make the Rd. by Walking, Inc. v. Turner*, 378 F.3d 133 (2d Cir. 2004) ......................... 25

*Shady Grove Orthopedic Assocs., P.A., v. Allstate Ins. Co.*,
  559 U.S. 393, 396 (2010) ................................................................................................ 10

*Simon v. E. Ky. Welfare Rights Org.*,
  426 U.S. 26, 40 n.20 (1976) ............................................................................................ 14

*Spann v. AOL Time Warner, Inc.*,
  219 F.R.D. 307, 316 (S.D.N.Y. 2003) ............................................................................ 19

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ........................................................................................ 13, 14, 16

*Strubel v. Comenity Bank*,
  842 F.3d 181, 187-88 (2d Cir. 2016) .............................................................................. 13

*Summers v. Earth Island Inst.*,
  555 U.S. 488, 496 (2009) ................................................................................................ 14

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
  546 F.3d 196, 202 (2d Cir. 2008) .................................................................................... 12

*Vincent v. Money Store*,
  304 F.R.D. 446, 453 (S.D.N.Y. 2015) ............................................................................ 24

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338, 350 (2011) ................................................................................................ 19

iv

**Statutes**

28 U.S.C. § 1367 ................................................................................................ 9
29 U.S.C. § 216(b) ............................................................................................ 5
N.Y. Lab. L. § 195 ................................................................................. 18, 21, 22
N.Y. Lab. L. § 198(1-b) ................................................................................ 21, 22
N.Y. Lab. L. §652(4) .......................................................................................... 4

**Rules & Regulations**

12 N.Y.C.R.R. § 137-2.2 ..................................................................................... 4
12 N.Y.C.R.R. § 137-2.3 ..................................................................................... 4
12 N.Y.C.R.R. § 146-1.3 .................................................................................... 21
12 N.Y.C.R.R. § 146-2.2 ................................................................. 4, 15, 16, 17, 20
12 N.Y.C.R.R. § 146-2.3 .................................................................................... 18
CPLR 901(b) ...................................................................................................... 10
Fed. R. Civ. P. 23 .................................................................................... passim
Fed. R. Civ. P. 37 ............................................................................................. 25

## PRELIMINARY STATEMENT

This Court should deny Plaintiffs' motion because: (1) supplemental jurisdiction over the class claims is inappropriate under these facts and circumstances; and (2) Plaintiffs' untimely submission fails to meet their burden of proving the elements necessary for Rule 23 class certification. In addition, as Plaintiffs have moved to certify only two of their class claims, the Court should grant Defendants' cross-motion to strike the remaining class claims from the Complaint as those claims have been abandoned.

The named Plaintiffs in this action, Kathleen Dowd and Nicole Silvaroli, are former servers employed by Defendant 6675 Transit Rd. LLC, which owns and operates Russell's Steaks, Chops & More ("Russell's), a high-end steakhouse located in Williamsville. These two former employees (who earned, on average, nearly $33 per hour in wages and tips during the relevant time period) are asking the Court to certify a class action based on claims that they and other similarly-situated employees were paid below minimum wage and given technically deficient paystubs. Defendants adamantly oppose Plaintiffs' claims. However, the Court is not being asked to rule on the merits of their claims at this time. The Court is being asked to determine only whether certification of the class proposed by Plaintiffs is appropriate. For the reasons discussed below, it is not.

This case has a unique procedural posture. It has been pending for nearly one year and 10 months; yet, Plaintiffs never filed for conditional certification of a Fair Labor Standards Act ("FLSA") collective action (despite asserting such a claim in the Complaint) and are only just now, after the close of discovery, requesting class certification on two of their three remaining class claims (all of which allege violations of the New York Labor Law ("NYLL")).

1

The fact that no class or collective action has been certified for Plaintiffs' federal claims presents a jurisdictional problem for the Court. Plaintiffs are asking the Court to exercise supplemental jurisdiction over the state law claims of an entire class based on the federal question jurisdiction over the FLSA claims asserted by the individual named Plaintiffs. In essence, Plaintiffs are attempting to litigate a state law class action in federal court. This should not be permitted, as the Court lacks subject matter jurisdiction over such an action.

In addition to the lack of jurisdiction, the Court should deny Plaintiffs' motion for class certification because they have not satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs are inadequate class representatives given that, among other issues, they lack standing to bring the claims they seek to have certified for class-wide resolution. Further, given information revealed in discovery, it is clear that Plaintiffs' claims are neither common nor typical of the class they propose, and individual issues will certainly predominate. This all makes class certification particularly inappropriate in this case.

## PROCEDURAL HISTORY

Plaintiffs commenced this litigation on December 16, 2016. *See* Dkt. #1 ("Compl."). The Complaint originally included five causes of action that were purportedly brought on behalf of all similarly-situated members of the "waitstaff" at Russell's – one arising under the FLSA and four under the NYLL. *See* Compl. ¶¶ 126-144, 160-169 (causes of action 1, 2, 3, 6, and 7). The Complaint defines the "waitstaff" to include "waiters, busboys, bartenders, and runners" who were employed at Russell's during the statute of limitations period. *See* Compl. ¶ 60. In addition to the NYLL class claims and FLSA collective action claim, the Complaint also includes Plaintiff Dowd's individual claims of retaliatory discharge arising under the FLSA and NYLL. *See* Compl. ¶¶ 145-159 (causes of action 4 and 5).

2

In an Order filed on November 27, 2017, this Court adopted the Report and Recommendation granting Defendants' motion to dismiss one of Plaintiffs' NYLL class claims (specifically, the sixth cause of action in the Complaint), which had alleged Defendants failed to provide wage notices to Plaintiffs and the putative class members at the time of hire, annually, and with each change in their wages. *See* Dkt. #26. As a result, the class claims asserted in the Complaint were reduced to three state law claims and one federal claim.

On December 11, 2017, Defendants filed their Answer. *See* Dkt. #28. In it, they raised a number of affirmative defenses to Plaintiffs' claims, including one drawn from NYLL § 198 that is based on Defendants complete and timely payment of all wages due. *See Id.* at ¶ 186.

Following Defendants' submission of their Answer, the parties engaged in discovery. This process included the exchange of interrogatories and document requests. Defendants also responded to Plaintiffs' requests for admissions, and the named Plaintiffs and Defendants were all deposed. (*See* October 12, 2018 Declaration of Michael E. Hickey, Esq. ("Hickey Decl."), ¶16). Given that Plaintiffs had not yet moved to certify a class action (under Rule 23) or a collective action (under the FLSA), throughout discovery, Defendants objected to any requests that sought the disclosure of documents or information related to non-party, putative class members. *Id.* at ¶ 17. By letter dated May 18, 2018, Plaintiffs initially took issue with Defendants' objections to producing class-wide information prior to certification. In that letter, Plaintiffs also clarified some of their discovery requests and raised concerns related to certain responses provided by Defendants. On June 21, 2018, Defendants responded to Plaintiffs' letter. In response to the issues raised by Plaintiffs, and based on some of the clarification they provided, Defendants produced additional responsive information. However, Defendants

maintained their objection to producing class-wide information prior to certification of a class or collective action. *Id.* at ¶¶ 18-19.

Plaintiffs raised no further issues with Defendants' discovery responses. They sent no further letters. They brought no concerns to the Court's attention. They filed no motions to compel. *See* Hickey Decl. ¶ 19.

Pursuant to this Court's Case Management Order (Dkt. #29), the discovery period ended on August 27, 2018.  A little over two weeks later, Plaintiffs' filed their motion for class certification under Rule 23 of the Federal Rules of Civil Procedure. *See* Dkt. #34.

With their motion, Plaintiffs seek to certify a class composed of "all bartenders, bussers, servers, and runners" who were employed by Russell's and paid below the standard minimum wage between December 16, 2010 and the date class certification, if any, is granted. *See* Dkt. #34-1. They also seek to certify a subclass that includes any such employees who were employed between April 9, 2011 and the date class certification, if any, is granted. *See id.*

Plaintiffs move for class certification only on two of the six remaining claims in the Complaint. *See generally* Dkt. #36, p. 2. Both of those claims arise under the NYLL. *Id.*

The first claim alleges that Defendants violated 12 N.Y.C.R.R. § 146-2.2 (and its predecessor, 12 N.Y.C.R.R. §§ 137-2.2, 137-2.3) by failing to provide adequate notice, upon hire and with any change in pay, that a "tip credit" was being taken against the putative class members' wages. Like most restaurants, Defendants pay their tipped employees below the standard minimum wage, as permitted by the NYLL. Specifically, NYLL §652(4) allows employers to pay a "food service worker" below the standard minimum wage "provided that the tips of such an employee, when added to such cash wage, are equal to or exceed the minimum wage." Plaintiffs admit that, with tips, they always earned above minimum wage. (Dowd Tr.

53:1-6; Silvaroli Tr. 14:7-11).[1] Their claim is only that they, and other similarly-situated employees, were provided inadequate notice under the applicable regulations that Defendants took a "tip credit" and paid them below the standard minimum wage.[2] They erroneously believe the purportedly inadequate tip credit notice entitles them to retroactive payment of the standard minimum wage. That is simply not the case.

The second claim for which Plaintiffs seek class certification alleges that Defendants failed to provide technically-compliant paystubs (or "wage statements") because information concerning the tip credit was not included on them. Neither of these claims is appropriate for class certification and Plaintiffs' motion for class certification should be denied.

Significantly, despite alleging an FLSA claim on behalf of "all others similarly situated," Plaintiffs never moved for conditional (or final) certification of an FLSA collective action under 29 U.S.C. § 216(b). As such, **they assert only individual FLSA claims.** They likewise have not moved to certify – and, instead, have simply **abandoned** – the third class claim arising under state law that is included in the Complaint.

## STATEMENT OF RELEVANT FACTS

Defendant 6675 Transit Rd. LLC owns and operates Russell's, which is a high-end steakhouse located in Williamsville. Russell's opened for business in 2008. Defendants Russell

---

[1] Citations to "Silvaroli Tr.," "Dowd Tr.," and "Jerge Tr." are to the relevant page and line numbers in the transcripts of the depositions of Nicole Silvaroli, Kathleen Dowd, and Mark Jerge. The referenced pages of those transcripts are attached as Exhibits A, B, and C to the Hickey Declaration filed herewith.

[2] As Plaintiffs note in their motion papers, Defendants began providing a new wage notice after the Complaint was filed which, even under Plaintiffs' interpretation, is compliant with the technical requirements of the relevant regulation. Therefore, in the event a class is certified (which, for reasons discussed below, would not be appropriate), any such class should not include employees hired after December 16, 2016 (the date the Complaint was filed).

Salvatore, Mark Jerge, and Robert Bingel are members of 6675 Transit Rd. LLC. Their responsibilities include managing Russell's and supervising the staff.

Dowd was hired to work as servers at Russell's on or about November 12, 2009. Her employment at Russell's ended on August 21, 2016. Dowd has extensive experience working in the restaurant industry. Before working at Russell's, Dowd had spent years working in the restaurant industry. She worked as a server at Siena Restaurant from January 2000 to May 2001. (Hickey Decl., Exh. D). She then she worked as a lead server at Indigo, a restaurant in Montana that her then husband owned, from July 2001 to June 2005. (*Id.*, Exh. D; Dowd Tr. 12:11-23). After that, she worked at O'Connell's American Bistro from October 2005 to January 2009, which was owned by her father-in-law and run by her then husband. (Hickey Decl., Exh. D; Dowd Tr. 19:2-16).  After leaving Russell's in August 2016, Plaintiff continued to work in the restaurant industry. Initially, she worked as a server at Sear restaurant in Buffalo. (Dowd Tr. 28:19-22), and she now works as a server at Black & Blue. (*Id* at 39:3-4).

Silvaroli was hired to work as a dining room server at Russell's on or about November 30, 2009. Her employment at Russell's ended in July 2016. Like Dowd, Silvaroli also has extensive experience in the restaurant industry. Before working at Russell's, Silvaroli worked as a server at Morton's in New York City (for about a year), Laughlin's in Buffalo (for about two years), and Hyde Park Steakhouse in Cheektowaga (for about one year). Her first job in the restaurant industry was at a restaurant owned by her father, the Lafayette Tap Room in Buffalo. (Silvaroli Tr. 18:14-18).  After leaving Russell's, Silvaroli continued to work as a server. She worked at Oliver's in Buffalo, then Sear, and now works at Hotel Henry. (*Id.* at 29:4-7).

Dowd and Silvaroli both admitted that, throughout their long histories of working as servers, they have always been paid the lower minimum wage applicable to employees who

6

receive tips. (Dowd Tr. 10:4-13, 16:7-15, 21:3-6, 28:23, 29:1-2, 40:14-16; Silvaroli Tr. 12:1-23, 13:1-3, 16:3-8, 17:11-23, 18:1-5, 26:14-23, 27:1, 30:18-22). They have never worked as a server and been paid the full, standard minimum wage rate. (Dowd Tr. 52:18-20; Silvaroli Tr. 18:6-9).

As had been the case in all their previous server positions, throughout their respective employments at Russell's, Plaintiffs were compensated through tips and with the lower hourly minimum wage applicable to tipped employees. That wage rate is set by New York State. Despite Dowd and Silvaroli being experienced servers, who had always been compensated at the tipped employee rate, their hourly wage and method of payment was explained to them upon being hired at Russell's. (Jerge Tr. 91:16-18; 93:20-23, 94:1-8). They were also told what they could expect to make in tips each week. (Jerge Tr. 11-22). Further, during Plaintiffs' employment and up to the present, Defendants have posted a New York Department of Labor poster in the workplace, which sets forth the minimum wage rate, the tipped employee wage rate, and explains the tip credit.[3] (Jerge Tr. 99:3-10).

In addition, Plaintiffs were both issued wage notices in 2012, 2013, and 2014 that specifically listed their hourly rate of pay. (Hickey Decl., Exhs. E, F). During her deposition, Dowd acknowledged understanding that the rate of pay shown in those notices was the lower minimum wage applicable to tipped employees. (Dowd Tr. 82:1-23). In other words, she understood that a tip credit was being taken.

Plaintiffs were also issued paystubs (or "wage statements") each time they were paid while working at Russell's, which set forth their hourly rate of pay and listed the amount they had received in tips. (Dowd Tr. 86:10-23, 87:1-3; Silvaroli Tr. 74:21-23, 75:1-15). During her

---

[3] Plaintiffs claim that Defendants failed to produce this Department of Labor poster that was posted in the workplace. That is not correct. While Defendants disclosed the existence of the poster during their depositions and in response to requests for admissions, Plaintiffs never requested a copy. (Hickey Decl. ¶ 23).

deposition, Dowd admitted that she fully understood that the rate of pay listed on her paystub was the rate applicable to tipped employees. (Dowd Tr. 86:14-16). That said, she also admitted to never looking at her paystubs while she was employed at Russell's. (*Id.*at 85:14-23, 86:1). Silvaroli similarly admitted that she understood that the rate of pay listed on her paystub was the lower rate of pay applicable to tipped employees. (Silvaroli Tr. 74:21-23, 75:1-4, 76:6-20). She also testified that, during her employment, she reviewed her paystubs "just occasionally." (*Id.* at 75:16-23, 76:1-5).

Finally, Dowd and Silvaroli have both admitted that throughout their employments at Russell's they always made above the standard minimum wage. (Dowd Tr. 53:1-6; Silvaroli Tr. 14:7-11). Their payroll records confirm this fact. Indeed, Dowd's payroll reports show that, on average, she received **$32.73** per hour in wages and reported tips while working at Russell's from December 2010 through her separation from employment. (*See* Hickey Decl., Exh. G). Silvaroli's payroll reports show that, on average, she received **$32.95** per hour in wages and reported tips while working at Russell's from December 2010 through her separation from employment. (*See* Hickey Decl., Exh. H).

## ARGUMENT

### I.   THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE LAW CLASS CLAIMS.

Supplemental jurisdiction is inappropriate in this case because Plaintiffs' state law claims are the true, predominate force behind this lawsuit. They are the only claims for which Plaintiffs seek class certification. Further, Plaintiffs' blatant attempt to use the FLSA as a jurisdictional hook to pursue remedies prohibited under New York law presents an exceptional circumstance that warrants this Court declining to exercise supplemental jurisdiction over the state law claims.

Supplemental jurisdiction is governed by 28 U.S.C. § 1367.  A district court's exercise of supplemental jurisdiction is discretionary.  *Id.* at § 1367(c); *see also Nat'l Fuel Gas Distrib. Corp. v. New York State Energy Research & Dev. Auth.*, 265 F. Supp. 3d 286, 299 (W.D.N.Y. 2017) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("Supplemental jurisdiction 'is a doctrine of flexibility, designed to allow courts to deal with cases involving pendant claims in the manner that most sensibly accommodates a range of concerns and values.'")).  As relevant here, under § 1367(c), the district court can decline to exercise supplemental jurisdiction over a state law claim that "substantially predominates over the claim over which the district court has original jurisdiction," or "in exceptional circumstances" when "there are other compelling reasons for declining jurisdiction."  Both of these factors warrant declining to exercise supplemental jurisdiction in this case.

The only reason Plaintiffs' lawsuit can proceed in federal court is because, in addition to their primary NYLL class claims, they have alleged secondary individual FLSA causes of action to create federal question jurisdiction.  Plaintiffs are not, and apparently have no interest in, pursuing their FLSA claims as a collective action.  Yet, their two individual FLSA wage claims and one individual FLSA retaliation claim provide the sole basis for federal question jurisdiction.  This evidences not only that Plaintiffs' state law claims predominate, but also that this lawsuit is nothing more than an obvious attempt by Plaintiffs to bootstrap a class action founded primarily on New York law into federal court so that they can pursue a remedy that is otherwise unavailable in New York State court.

More specifically, Plaintiffs claim to be seeking to recover "unpaid minimum wages" and "statutory damages" on behalf of themselves and the proposed class based solely on their allegations that Defendants utilized a tip credit without having complied with certain technical

requirements of New York State law, notwithstanding their admissions that they did not suffer the harm against which those requirements are intended to protect. As such, it is clear that Plaintiffs' primary goal is to collect on the statutory damages provided for in the NYLL for the alleged technical violations. The statutory damages Plaintiffs are seeking, however, cannot be pursued by class action in New York. *See* CPLR 901(b) ("an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action.") But, Plaintiffs may be able to pursue them in federal court. *See Shady Grove Orthopedic Assocs., P.A., v. Allstate Ins. Co.*, 559 U.S. 393, 396 (2010) (holding that Rule 23 preempts CPLR 901(b) under federal diversity jurisdiction).[4] Thus, it is obvious that Plaintiffs are just bootstrapping their predominant state law claims to their secondary, individual FLSA causes of action to keep their state law claims in federal court and reap the benefits.

No court, either in the Second Circuit or elsewhere, has ever held that the exercise of supplemental jurisdiction is proper in these circumstances. Rather, the Second Circuit has recognized only that it is proper to exercise supplemental jurisdiction over NYLL class claims pursued simultaneously with a related FLSA collective action. *See, e.g., Salim Shahriar v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d 234, 244, 248 (2d. Cir. 2011) (holding supplemental jurisdiction may be exercised "when the Court has federal question jurisdiction over FLSA claims in a collective action" proceeding "simultaneously" with the NYLL claims). Here, Plaintiffs are not pursuing NYLL class claims "simultaneously" with a related FLSA collective action. Plaintiffs never even moved for the certification of an FLSA collective action. Instead,

---

[4] *Shady Grove* held only that CPLR 901(b) does not apply under federal diversity jurisdiction. 559 U.S. at 396. It did not address its application in a case where the court's subject matter jurisdiction is based solely on a federal question. *Id.* Neither the Supreme Court nor the Second Circuit has addressed the issue, and it remains an open question in this district.

they are attempting to rely solely on their own individual FLSA claims to confer subject matter jurisdiction over the state law claims of an entire class, all so they can pursue class-wide statutory damages that are not permitted in a class action in New York State court. That is not a proper exercise of supplemental jurisdiction. It is nothing more than a rouse for filing a state court class action in federal court.

The Second Circuit recognized in *Smith & Wollensky* that there are situations where supplemental jurisdiction over NYLL class claims may not be appropriate.  *Id.* at 250.  The Third Circuit case of *DeAsencio v. Tyson Foods, Inc.*,  which declined to exercise supplemental jurisdiction over a predominantly state-law focused Rule 23 class action, provides a quintessential example of one such situation.  There, the Court explained:

> Generally, a district court will find substantial predomination where a state claim constitutes the real body of a case, to which the federal claim is only an appendage – only where permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog.

342 F.3d 301, 309 (3d Cir. 2003).

This is precisely what is going on here.  The true substance of Plaintiffs' case is their state law claims. The individual FLSA allegations are a mere appendage, alleged solely as a means to pursue New York statutory damages in the more favorable federal forum.  Such a case should not be permitted to proceed in federal court.  For all of these reasons, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' NYLL class claims.

## II.    THE COURT SHOULD DENY PLAINTIFFS' MOTION BECAUSE THEY HAVE NOT MET THE REQUIREMENTS FOR RULE 23 CLASS CERTIFICATION.

Even if the Court is inclined to exercise its discretion to extend its supplemental jurisdiction to Plaintiffs' state law class claims, it must still deny Plaintiffs' motion because they have not met their burden of proving the elements necessary for Rule 23 class certification.

### A.  <u>Standard for Certifying a Class under Fed. R. Civ. P. 23.</u>

A court may certify a class action only if, "after a rigorous analysis," it is satisfied that Plaintiffs have met the Rule 23 requirements by a preponderance of the evidence.  *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008).  As Plaintiffs recognize,[5] the Court's task at the Rule 23 stage is not to resolve the liability question. Indeed, "[a] motion for class certification should not, however, become a mini-trial on the merits." *Lewis Tree Serv. v. Lucent Techs., Inc.*, 211 F.R.D. 228, 231 (S.D.N.Y. 2002). Rather, the Court must decide whether it has "receive[d] enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement is met."  *In re Initial Pub. Offerings Sec. Litig. v. Merrill Lynch & Co.*, 471 F.3d 24, 41 (2d Cir. 2006).

In particular, Plaintiffs must first prove their compliance with the (1) numerosity, (2) commonality, (3) typicality and (4) adequacy of representation prerequisites under Rule 23(a). *Comcast Corp. v. Behrend*, 569 U.S. 27, 27 (2013).  Then, Plaintiffs must "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)," *id.*, in this case – predominance and superiority.  Although the "same analytical principles govern Rule 23(b)…Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Id.* at 34 (citations omitted).

### B.  <u>Plaintiffs Cannot Satisfy the Rule 23 Requirements for Class Certification.</u>

Plaintiffs have failed to meet their burden under Rule 23. They are inadequate class representatives, and their proposed class cannot meet the commonality, typicality, and predominance requirements for certification. Therefore, their motion should be denied.

---

[5] Despite recognizing that the issue of liability is not to be decided at this stage of the proceedings, Plaintiffs' motion papers nevertheless include an extensive discussion of their position on the merits of their claims. As noted elsewhere in this memorandum, Defendants deny any liability arising from Plaintiffs' claims. However, Defendants have not included an extensive discussion of the merits of the parties' claims and defenses because that is not the issue to be decided at this time.

1. **The Named Plaintiffs Are Inadequate Class Representatives Because They Admittedly Suffered No Injury as a Result of the Alleged Notice and Paystub Violations.**

Dowd and Silvaroli seek to represent all "servers, bartenders, runners, and bussers" who have been employed at Russell's since December 16, 2010. However, they cannot be adequate class representatives because they lack standing to bring their pay stub and tip credit notice claims. A named plaintiff must possess the same interest and have suffered the same injuries as the class he or she purports to represent. *In re Literary Works In Elec. Databases Copyright Litig. V. Thomson Corp.*, 654 F.3d 242, 249 (2d Cir. 2011); *Ruggles v. Wellpoint, Inc.*, 272 F.R.D. 320, 333 (N.D.N.Y. 2011) ("A class representative must be part of the 'class' that she purports to represent."). Here, the named Plaintiffs cannot demonstrate they suffered any injury sufficient to confer standing, let alone an injury similar to the putative class members.

"To satisfy the 'irreducible constitutional minimum' of Article III standing, a plaintiff must demonstrate (1) 'injury in fact,' (2) a 'causal connection' between that injury and the complained-of conduct, and (3) a likelihood 'that the injury will be redressed by a favorable decision.'" *Strubel v. Comenity Bank*, 842 F.3d 181, 187-88 (2d Cir. 2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). In *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), the Supreme Court confirmed that "[i]njury in fact is a constitutional requirement," noting further that the legislature cannot "'erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" *Id.* at 1547-1548 (quoting *Raines v. Byrd*, 521 U.S 811, 820, n.3 (1997)).

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (citing *Lujan*, 504 U.S. at 560). "For an injury to be

'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan*, 504 U.S. at n.1).  To be "concrete," the "injury must be '*de facto*'; that is, it must actually exist." *Id.* (citing BLACK'S LAW DICTIONARY 479 (9th ed. 2009)). While the Supreme Court noted in *Spokeo* that an injury need not be tangible, it must nevertheless be "real" and not "abstract." *Id.* at 1548-49.

Although the legislature has the power to delineate a procedural technicality which, if violated, could result in some intangible harm, this "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  *Id.* at 1549.  Rather, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.  See also Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) (holding that the "deprivation of a procedural right without some concrete interest that is affected by the deprivation – a procedural right in vacuo – is insufficient to create Article III standing").

The standing requirements are "no less true with respect to class actions than with respect to other suits." *Lewis v. Casey*, 518 U.S. 343, 357 (1996). "It is not enough that the conduct of which the plaintiff complains will injure someone. The complaining party must also show that [she] is within the class of persons who will be concretely affected." *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982); *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (explaining that "even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent") (citations omitted).

There must be at least one class representative for each claim asserted in a class action with standing to assert that claim. *See Cent. States Se. and Sw. Areas Health & Welfare Fund v.*

*Merck-Medco Managed Care, LLC*, 504 F.3d 229, 241 (2d Cir. 2007); *see also Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) ("no class may be certified that contains members lacking Article III standing") (citations omitted). Claims, for which the class representatives do not have standing, must be dismissed. *Javier H. v. Garcia-Botello*, 2011 U.S. Dist. LEXIS 104039, *20 (W.D.N.Y. Sept. 11, 2011) (dismissing claims for which no named plaintiff possessed standing). Here, the named Plaintiffs do not have standing to bring the claims for which they have requested certification of a class action (i.e., the tip credit notice and paystub claims). Therefore, class certification is inappropriate, and those claims should be dismissed.

### a) The Named Plaintiffs Suffered No Injury Resulting From Defendants' Alleged Failure to Provide Written Tip Credit Notice.

Plaintiffs claim that Defendants failed to issue them notices, at the time of hire and with each change in their rates of pay, explaining the tip credit taken against their wages that reduced their rates of pay below minimum wage. This tip credit notice is a creation of the New York Department of Labor – there is no statutory requirement to provide such a notice. The regulatory requirement appears only in the New York Hospitality Wage Order – specifically, 12 N.Y.C.R.R. § 146-2.2.

The goal of the regulation is clear on its face: ensure that employees are aware that they are being paid below minimum wage because they also receive tips. Here, Plaintiffs lack standing because they did not suffer any harm due to Defendants' alleged failure to provide a written notice of the tip credit taken against their wages. They **were aware** of the tip credit taken against the minimum wage – and their corresponding receipt of a lower, tipped employee rate – at the time of hire and throughout their employment at Russell's. Thus, the goal of the relevant regulation was accomplished.

During their depositions, both named Plaintiffs admitted knowing they were paid below

15

minimum wage because they were tipped employees. They admitted that is how they have been paid at every employer where they have worked as a server, including at the restaurants where they currently work. Further, Plaintiffs both admit receiving wage notices in 2012, 2013, and 2014 that specifically listed their hourly rate of pay. (Hickey Decl., Exhs. E, F). During her deposition, Dowd acknowledged understanding that the rate of pay shown in those notices was the lower minimum wage applicable to tipped employees. (Dowd Tr. 82:1-23). In other words, she understood that a tip credit was being taken. Silvaroli testified that, while she may have learned at some point at Russell's that she would be paid the lower wage for tipped employees, she believed her earning that tipped employee rate "was just understood" because "it's a restaurant." (Silvaroli Tr. 39:14-23).

Further, Plaintiffs suffered no economic harm resulting from any purported failure to provide an adequate tip credit notice. Plaintiffs both admit that, throughout their employment at Russell's, they made more than the standard minimum wage. (Dowd Tr. 53:1-6; Silvaroli Tr. 14:7-11). In fact, the named Plaintiffs made, on average, nearly $33 per hour in wages and tips while working at Russell's during the relevant time period. (*See* Hickey Decl., Exhs. G, H).

Given Plaintiffs' admitted knowledge of the manner in which they were paid, and the lack of any economic harm, they clearly suffered no injury as a result of Defendants' alleged failure to provide a written tip credit notice. A written tip credit notice would have provided them with inconsequential information of which they were already aware. In other words, Plaintiffs suffered nothing more than a "bare procedural violation," which the Supreme Court has deemed insufficient to establish an injury in fact and confer standing. *Spokeo*, 136 S. Ct. at 1550.

In an opinion letter discussing the tip credit regulations (12 N.Y.C.R.R. §§ 146-1.3 and 146-2.2), the Department of Labor's General Counsel explained that "written notice is not

necessary to protect employees who have actual knowledge of the tip credit rules." (*See* Hickey Decl., Exh. I).[6] Put another way, an employee who does not receive written notice has suffered no harm if she otherwise understands how she was paid and that a tip credit was taken.

Again, Plaintiffs admit knowing that, as tipped employees, they were paid below minimum wage. They knew a tip credit was taken during their employment at Russell's, just like it had been taken at every other restaurant where they worked. The restaurants where Dowd had worked prior to Russell's, which she helped run and her then husband or father-in-law owned, utilized the tip credit. The restaurant Silvaroli worked at years ago, which her father owned, and every restaurant she has worked at since then, utilized the tip credit. There is no basis for them to claim they suffered harm due to Defendants' alleged failure to provide written tip credit notice.

The named Plaintiffs cannot serve as representatives of a class of employees who were allegedly not provided written tip credit notices under 12 N.Y.C.R.R. § 146-2.2, because they suffered no "injury in fact" due to their personal knowledge of how they were paid and lack of any economic harm. The named Plaintiffs cannot allege anything more than a bare procedural violation, which is insufficient to confer standing. In the absence of a class representative with standing, the tip credit notice claims should be dismissed. *See Javier H.*, 2011 U.S. Dist. LEXIS 104039, at *20 (dismissing claims for which no named plaintiff possessed standing).

### b) The Named Plaintiffs Suffered No Injury as a Result of the Alleged Paystub Violation.

Plaintiffs also seek to certify a class action related to their claim that Defendants failed to

---

[6] Several courts have held that this Department of Labor Opinion Letter, and the interpretation of the tip credit regulations set forth therein, is entitled to deference. *See Carvente-Avila v. Chaya Mushkah Rest.*, 2016 U.S. Dist. LEXIS 75396 (S.D.N.Y. Mar. 1, 2016); *Franco v. Jubilee First Ave. Corp.*, 2016 U.S. Dist. LEXIS 114191, *39-41 (S.D.N.Y. Aug. 25, 2016) (recognizing the application of the Opinion Letter, but holding that defendants had waived any arguments regarding its applicability).

issue technically compliant paystubs pursuant to NYLL § 195(3) and 12 N.Y.C.R.R. § 146-2.3. Plaintiffs lack standing to assert this paystub claim because they have suffered no injury stemming from any alleged deficiencies in their paystubs. Once again, Plaintiffs allege nothing more than a "bare procedural violation" that is insufficient to confer standing.

Plaintiffs have admitted they received paystubs (or "wage statements") each time they were paid while working at Russell's, which set forth their hourly rate of pay and listed the amount they had received in tips. (Dowd Tr. 86:10-23, 87:1-3; Silvaroli Tr. 74:21-23, 75:1-15). During her deposition, Dowd admitted that she fully understood that the rate of pay listed on her paystub was the rate applicable to tipped employees. (Dowd Tr. 86:14-16). That said, she also admitted to never looking at her paystubs while she was employed at Russell's. (Dowd Tr. 85:14-23, 86:1). Silvaroli similarly admitted that she understood that the rate of pay listed on her paystub was the lower rate of pay applicable to tipped employees. (Silvaroli Tr. 74:21-23, 75:1-4, 76:6-20). She also testified that, during her employment, she reviewed her paystubs "just occasionally." (Silvaroli Tr. 75:16-23, 76:1-5).

Plaintiffs were clearly not harmed by any technical deficiency in the content of their paystubs. They admittedly understood that their paystubs showed the tipped employee minimum wage rate, as opposed to the standard minimum wage. Any additional information concerning the tip credit would have been superfluous, at least for the named Plaintiffs. Further, as was the case with the tip credit notice, Plaintiffs similarly suffered no economic harm as a result of any purported deficiency in their paystubs. They never made less than the full minimum wage. Lastly, Plaintiffs rarely – if ever – looked at their paystubs. As a result, not only were they not harmed, there is no way they *could* have been harmed by any lack of information set forth in a paystub they did not review.

In the absence of an injury-in-fact, Plaintiffs cannot establish Article III standing and cannot serve as representatives of the proposed class. Without an adequate class representative, the paystub claims should be dismissed. *See Javier H.*, 2011 U.S. Dist. LEXIS 104039, at *20

### 2. Plaintiffs' Notice and Paystub Claims Are Neither Typical Nor Common of the Putative Class and Individual Issues Predominate.

Plaintiffs cannot meet the commonality, typicality, or predominance requirements for class certification. Plaintiffs' claims are teeming with individualized issues that make class-wide resolution untenable.

Commonality "requires the plaintiff to demonstrate that the class members 'have suffered the same injury'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citing *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). "What matters to class certification is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.*

Similarly, typicality "requires that the claims of the [named plaintiffs] be typical of those of the class, and is satisfied when each class member's claim arise from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307, 316 (S.D.N.Y. 2003) (quoting *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001)). Moreover, when a named plaintiff's claims are subject to unique defenses, her claims are not typical. *See, e.g., Rocco v. Nam Tai Elecs., Inc.*, 245 F.R.D. 131, 135-36 (S.D.N.Y. 2007).

Finally, in addition to the requirements under Rule 23(a)(2), in order to certify a class action under Rule 23, Plaintiffs have to demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members." FRCP 23(b)(3). This "requirement is satisfied 'if resolution of some of the legal or factual questions that

qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (citation omitted).

Here, as discussed above, the individual knowledge of each named Plaintiff and putative class member directly impacts the viability of their tip credit notice and paystub claims. This individualized issue predominates and results in there being no common or typical issue that is capable of class-wide resolution.

As previously discussed, the written tip credit requirement, upon which Plaintiffs base one of their claims, is set forth in the Hospitality Wage Order (12 N.Y.C.R.R. § 146-2.2) that was issued by the New York Department of Labor in 2011. Since then, the Department of Labor has interpreted its own regulation and stated that the written notice called for in 12 N.Y.C.R.R. § 146-2.2 is "not necessary to protect employees who have actual knowledge of the tip credit rules."(*See* Hickey Decl., Exh. I). The inclusion of information concerning the tip credit on a paystub would be similarly unnecessary if an employee already knows how she is being paid and that a tip credit is being taken.

While Plaintiffs proposed a number of questions they believe to be common to the putative class, those questions completely ignore the individual knowledge of the class members. Individualized proof regarding each employee's knowledge of the tip credit (which may vary based on what they were told, their experience, their particular position, and other factors) may produce a variety of answers to any common questions that may exist and, as a result, renders this matter ill-suited for class-wide adjudication. Not only does the issue of individual knowledge weigh against a finding of commonality, but it also demonstrates that individual issues will predominate in this action.

20

As discussed above, Plaintiffs admit that, during their employment at Russell's, they knew they were being paid the lower, tipped employee minimum wage rate. They understood they were paid below the standard minimum wage and, thus, that a tip credit was being taken. They knew that the rate of pay listed in their paystubs was the lower, tipped employee rate. It is how they had been paid throughout their lengthy careers as servers in the restaurant industry.

Given the extent of their individual knowledge, Plaintiffs suffered no injury based on Defendants' alleged failure to issue written tip credit notices and compliant paystubs. Thus, if there were a class of employees who are entitled to bring a cause of action based on Defendants' alleged failure to issue a compliant tip credit notice or paystub, it does not include the Plaintiffs. Their claims are neither common nor typical of any such class of employees.

Finally, the ability of Defendants to put forth an affirmative defense to the claims of Plaintiffs' proposed class is fatal to class certification. Plaintiffs' claims based on a lack of written tip credit notice and the issuance of non-compliant paystubs are rooted in two different provisions of the same statute  – NYLL §§ 195(1) and (3) . That statute contains the only provisions related to any sort of wage notice; thus, the regulations concerning tip credit notices and the contents of paystubs can only be seen as interpreting NYLL § 195. *See Hicks v. T.L. Cannon Mgmt. Corp.*, 13-cv-06455-EAW-MWP, Dkt. #321 (W.D.N.Y. Mar. 12, 2018) (observing that "NYLL § 195(1)(a) is the only provision of the NYLL that sets forth a requirement that employees be provided with a wage notice, and so the only reasonable interpretation of §§ 146-1.3 and 146-2.2 is that the NYDOL deemed them necessary to carry out NYLL § 195(1)(a)).[7] Defendants have a complete affirmative defense to these § 195(1) and (3) claims, which is specifically spelled out in NYLL §§ 198(1-b) and (1-d).

---

[7] A copy of Judge Wolford's March 12, 2018 decision in the *Hicks* case is attached to the Hickey Declaration as Exhibit J.

21

Those sections of the NYLL provide, in relevant part, that "it shall be affirmative defense that…the employer made complete and timely payment of all wages due" to the employee who was not provided notice as required by NYLL § 195(1) (which, as discussed, is the only statute that could encompass the at-issue tip credit notice) or a wage statement as required by NYLL § 195(3) (i.e., a paystub). *See* NYLL §§ 198(1-b), (1-d).

Defendants assert that each named Plaintiff and putative class member was, in fact, paid the proper wages in timely manner. *See* Dkt. #28, ¶ 186. However, unless Plaintiffs are willing to stipulate to Defendants' complete and timely payment of all wages due, this is something that necessitates an individualized inquiry and individualized proof. There are simply no alternatives in this regard.

In *Gregory v. Stewart's Shops Corp.*, 2016 U.S. Dist. LEXIS 89576, at *97 (N.D.N.Y. July 8, 2016), the court noted the defendant's assertion of an affirmative defense in connection with its decision to deny class certification. The court specifically held:

> [T]he plaintiffs are clearly claiming that they did not receive all wages they were due…. Thus, resolution of the affirmative defense to plaintiffs' wage notification claim will implicate the same concerns about individualized proof that precluded class certification of plaintiffs' NYLL off-the-clock claims. It is clear in this Circuit, that a Rule 23 class action may be denied if individualized issues relating to a defense in a wage and hour action predominates over issues of law and fact common to the proposed class.

*Id.* (citing *Myers*, 624 F.3d at 551). The instant case is indistinguishable. If class certification were granted in this case, then individualized issues relating to Defendants' affirmative defense to the tip credit notice and paystub claims would predominate over issues of law and fact common to the proposed class. As such, class certification is not appropriate.

### III.   PLAINTIFFS' MOTION FOR CLASS CERTIFICATION IS UNTIMELY AND POTENTIALLY OVERBROAD.

Rule 23(c)(1) of the Federal Rules of Civil Procedure provides that, "at an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." This is not an "early practicable time." Rather, Plaintiffs waited nearly one year and nine months after commencing this action to file a motion for class certification. This case proceeded all the way through discovery as a two-plaintiff case. Indeed, discovery concluded weeks before Plaintiffs filed their motion for class certification. Plaintiffs' delay is inexcusable. Their motion should be denied as untimely.

In addition to being untimely, Plaintiffs' motion papers appear to, at times, improperly attempt to expand the class by adding "banquet servers" who were not included in the Complaint's class definition. In the Complaint, Plaintiffs purported to "bring the claims in this Complaint arising out of the NYLL under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class consisting of all persons who have worked as **waiters, busboys, bartenders, and runners**…." Compl. ¶ 60. No reference to banquet servers appears in the Complaint. Yet, in their motion for certification, Plaintiffs have proposed, at least at times, a broader class definition that includes "all bartenders, back and front servers, cocktail servers, banquet servers, and bussers." Dkt. #36, p. 1. At other times, including in Plaintiffs' proposed order (Dkt. #34-1, ¶ 1), Plaintiffs use the term "servers," without referencing banquet servers (as they do in their memorandum of law) or waiters (as they did in their complaint). In light of these inconsistencies, it is unclear exactly who Plaintiffs propose including in the class.

That said, this Court should disregard any attempt by Plaintiffs to include any newly added class members. This Court's Local Rules of Civil Procedure specifically state that a class action complaint "shall set forth" the "definition of the class." Local Rule 23(b)(2)(A). Banquet

servers were not included in the Complaint's class definition. If Plaintiffs wished to expand their class, they were obligated to seek leave to amend the Complaint by the deadline set by the Court – March 2, 2018. *See* Dkt. #29, ¶ 5. They should not be permitted to ignore that deadline, let discovery expire, and then add additional class members. *See, e.g., Vincent v. Money Store*, 304 F.R.D. 446, 453 (S.D.N.Y. 2015) (noting that plaintiffs may limit the class definition from the complaint, but no case permits "considerably expanding a class on a certification motion from what was originally proposed in the Complaint"). If Plaintiffs were permitted to expand the class at this late date, Defendants would be deprived of conducting and defending against discovery concerning the claims of the newly-added class members. Simply put, Plaintiffs' apparent attempt to include banquet servers in the class must be rejected.

## IV.    PLAINTIFFS' PROPOSED NOTICE IS PREMATURE.

It is Plaintiffs' burden to provide sufficient evidence to support their claims before the Court should approve a notice to members of the putative class. As discussed above, Plaintiffs have not met their burden. However, if the Court decides to grant Plaintiffs' motion and direct the issuance of notice to a certified class, Defendants do not agree that Plaintiffs' proposed notice should be approved. Defendants respectfully request that the Court permit, as is customary, the parties to confer and submit a jointly acceptable form of notice or permit further briefing by Defendants on this issue. *See Ravenell v. Avis Budget Care Rental, LLC,* 2010 U.S. Dist. LEXIS 72563, at *16 (E.D.N.Y. July 19, 2010) (directing parties to confer on form and content of notice and submit a proposed joint notice to the court).

## V.    PLAINTIFFS' POST-DISCOVERY REQUEST TO COMPEL PRODUCTION OF CLASS-WIDE INFORMATION MUST BE DENIED.

For the first time, in their motion for class certification, Plaintiffs ask that this Court order the "expedited" production of certain class-wide information. This motion, however, is not the

appropriate vehicle to ask for such relief. *See* Fed. R. Civ. P. 37. And, since the discovery period has ended (*see* Dkt. #29 ¶ 10), their inappropriate and untimely request should be denied.

The deadline for the completion of discovery was August 27, 2018. Plaintiffs did nothing during the discovery period to enforce their purported right to class-wide information. They simply raised the issue with Defendants once, and when Defendants responded, they let the discovery deadline pass without doing anything more. Now, after the discovery deadline has expired, and in their motion to certify their purported class action claims, Plaintiffs are asking the Court to compel Defendants to provide information after they: (i) made no good faith effort to resolve the purported discovery dispute; and (ii) filed no motion to compel prior to the expiration of the discovery period. This is, however, not the appropriate time, or the appropriate vehicle to do so. As such, the Court should deny Plaintiffs' untimely and procedurally improper request.

## VI.   THE COURT SHOULD STRIKE ANY REMAINING CLASS CLAIMS FROM THE COMPLAINT AS THEY HAVE BEEN ABANDONED.

Plaintiffs have moved to certify only two of their NYLL class claims; one alleging improper wage notices and the other improper pay stubs. They have not attempted to certify their FLSA collective claim or any of their remaining state law class claims, notwithstanding that: (i) the Complaint was filed nearly one year and nine months ago; and (ii) discovery concluded weeks before their class certification motion was filed. As such, it is clear that Plaintiffs have abandoned their remaining class claims, and the Court should therefore strike those claims from the Complaint. *See Sanchez v. Turner*, 2002 U.S. Dist. LEXIS 10911, *10-11 (S.D.N.Y. June 19, 2002), *aff'd, Make the Rd. by Walking, Inc. v. Turner*, 378 F.3d 133 (2d Cir. 2004) (granting defendants' motion to strike and dismissing plaintiffs' remaining class claims based on failure to move for class certification during more than two year pendency of action).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiffs' motion for class certification in its entirety, with prejudice, and grant Defendants' cross-motion to strike the remaining class claims in the Complaint.


DATED:  October 12, 2018                          BOND, SCHOENECK & KING, PLLC

                                                  By:  ___s/Michael E. Hickey_____
                                                       Sharon M. Porcellio, Esq.
                                                       Michael E. Hickey, Esq.
                                                       Avant Building – Suite 900
                                                       200 Delaware Avenue
                                                       Buffalo, New York 14202-2107
                                                       Telephone:  (716) 416-7000

1313552.6